in the case of contradictions and ambiguities. I thought I'd start this by addressing the government's motion to dismiss. If you can keep your voice up. My colleagues hear quite well, but I'm kind of deaf. Oh. All right. Is this better? Yes, thanks. All right. The government's argument was that Mr. Bloom did not attack Rule 11 or the plea colloquy in either the opening brief of his appeal and also below. And actually, the answer to that is it was attacked both in the opening brief on page 8 and 12 and in the sentencing memo at excerpt 100 and in the sentencing hearing and also in objections to the PSR at excerpt 99 and 100. The second argument was that there's no exception to the enforcement of the waiver of the right to appeal. We disagree with that. We believe that Buchanan as well as Posse are two cases that address whether or not there's a right to appeal when you do not have notice. Buchanan was an ambiguous plea agreement just like this one is, and the court had a face-to-face speech that it gave to the defendant stating that he had the right to appeal on the issue of restitution, and that the government did not object to that. And that is similar in this case at excerpt 151 to 153. The government did not object to the court's telling Mr. Bloom that he could have the right to appeal. In Posse, and I think I'm pronouncing that correct, P-S-O-S-I-E, that was another case that addressed an exception to the waiver of a right to appeal, and that was the right to notice. And again, the defendant had a plea agreement that did not mention restitution at all, and there was $31,000 at stake, and there was no amount or no estimate in the plea agreement. And the court found that the defendant, Mr. Posse, did not waive his right to appeal on the issue of restitution when the plea agreement had no mention of it, and therefore he had no notice. Counsel, I noticed that you rely on the Phillips case in your petition, and yet here we're basically dealing with a contract. He was represented by counsel throughout the process. There's no evidence that I'm aware of that this plea was unknowing or involuntary. We've got some boilerplate issues that are inconsistent, but that happens in contracts with some frequency, does it not? I agree that sometimes contracts are very ambiguous and have all types of things that mean nothing from one part of it to another. That's true. So whose burden is it in this case to show that, in fact, he did not knowingly waive his right to appeal? I think two things. Mr. Bloom, if you want to call him Mr. Jared, Mr. Bloom signed the plea agreement in October, and the PSR did not raise anything about the PSR was the first time that restitution was mentioned that actually had a figure on it. And in the plea agreement, it said in paragraph F that there was no restitution in this case, and he relied upon that. That was the boilerplate, right? Well, that's what the government has argued, but I've never seen... Well, it's in virtually every form, is it not? Well, I've never seen where there's no restitution in the case in all the plea agreements that I've seen that had to do with on the tail end of it, they're talking about 3553, which talks about restitution. It's seven. I agree to that. I mean, it's there. But my client basically relied upon that no restitution. Did your client read the contract? He said he read the contract. Did he understand it? He said he understood it also. Okay, so here we have an unusual situation where the guy actually claimed he read it as opposed to his lawyer having read it, and you're affirming that he did so, right? Yes, that's what he told the court. That's what he told the sentencing court, and he told that to the change of hearing. He said that he understood that that was part of it, but he also said that he really believed that he had no restitution in this, and that's when he was at... They never mentioned restitution at the change of plea hearing. Okay, so here we have a knowledgeable defendant who read the contract, and there's an inconsistency in the contract, not in the colloquy with the judge. What do we do with that? Well, I think when you look through the rest of what is going on with this case, with the sentencing hearing and what the court had to say at the sentencing hearing, that it would accept all the plea agreement except the section on the restitution and then granted restitution when it also said that there was not enough evidence before the court to grant the restitution. I mean, I think there's so many contradictions in this case that it's unbelievable. Let me ask you this. Do we even get to the restitution question if we find that he validly waived his right to appeal? No. Okay. So really, isn't that the primary issue we get to here? That's the primary issue. Did he knowledgeably waive his right to appeal? If he did, we don't get to the restitution question, and the rest is surpluses. I agree. Okay. And what's the precise waiver language? I want to make sure I focus on it. I'm sorry, Reiner. What is the precise waiver language in the plea agreement? Can you put my nose in it so I'm focusing on the precise language? Yes. I've got the plea agreement here in front of me. The plea agreement. Let me see. Do I have the plea agreement? I haven't seen it. The plea agreement says no restitution in this case. If you have the plea agreement, is it paragraph F? No, I've got the part. I want to know what language is it in which he says I waive the right to appeal. That's the language I'm interested in. Where he has said that. That's in the plea hearing. Oh, so it's not in the agreement. And it's in the agreement also. So where is it in the agreement? It's in the agreement, too. It's under the terms of the agreement. Okay. Page 3, paragraph 6. The defendant will waive all right to appeal the conviction and sentence imposed under this agreement and will waive all rights to collaterally attack the conviction and sentence, except on the grounds of. Yeah. That's fairly standard language. I'm reluctant, I have to say, to read that to say that if the argument is that the government has breached the agreement, that he can't bring an appeal to enforce the agreement. Maybe the government has an argument that can persuade me that he's waived any right to appeal a breach by the United States of the agreement. Now, if he's not waived that, then the question is, what's a breach? I've got that. And there's difficult language here that says, well, number one, there's no restitution involved, but also it says the judge may impose restitution. Right. I assume you read that, too. Why didn't you say, would you guys make up your mind? Well, that's sort of it. I mean, that's what I think the defense counsel should have done in this instance. I see. You were not defense counsel at all? No, no, no, no. I'm just an appellate CJ. We never thought you were.  No. Of course not. I wouldn't admit it if I did. Okay. I mean, the reality is on page 9, paragraph A4, it says the court may order the defendant to pay restitution pursuant to 18 U.S.C. 3663, etc. So, clearly, he can't say that there's nothing in this document that didn't give him a fair warning about this, but I think ultimately, at least for me, the issue is that he waived his right to appeal. I don't think we get, as you apparently agree, we don't get to the restitution issue if we find that he knowingly and intelligently waived his right to appeal. Well, he told that to the court when he was there for the change of plea, and I'm stuck with that language. It's true. So, can you point me to the change of plea language so I can see that also? The change of plea language. I've got the ER here in front of me. The court went through this pretty much where Mr. Bloom is saying, yes sir, yes sir, I understand all of this, and there's nothing I can do about that. Okay. On page 44 at the bottom, the court is asking him about collateral attack, you agree to waive all your rights, collaterally attack the sentence, the conditions, including forfeiture, etc., that I impose, and it flips over to page 45 at the top, and he says, yes sir. And he says, then halfway down the paragraph, or page on 45, he says, so the court says there's one exception, the other exception is if the decision to plead guilty today turns out to be not voluntary, but you're here, it's voluntary, isn't it? And at line 14, my client says, yes sir. Wait a minute. Where is it? Okay. You waive the right to appeal on all grounds contained in, you waive the right to appeal the sentence as long as I do it legally, maximum sentence. You can't waive anything. You waive anything with regard to forfeiture or fines. Basically, we'll waive everything by signing this, waive collateral attack. Okay. Well, the government can answer my question, which is to say, I have trouble saying to a defendant, when you agree to waive anything, you agree to the government reaching the agreement that you're here agreeing to. Now, what's in the agreement is another question.  Well, my client told me on the telephone yesterday morning that he would like to have the agreement withdrawn. I did not advise him that was a good idea, but he says that's what he would be willing to do. However, at the sentencing hearing, his trial counsel actually argued that it was for specific performance by the government is what they were asking, and that he did not want to withdraw the plea. So there you have it. Like I said, it's a case of contradictions and ambiguities all over the place. He's complaining about ambiguity in the plea agreement, but his position seems to be quite ambiguous. Yes, you are. Helen, frankly, when you're talking about a contract, if you have ambiguity, you have something that's not specifically enforceable, don't you? That's basic contract law. That's right. So if you can't specifically enforce it as to the provision in question, then what's his beef? I agree, Your Honor. I mean, if you can't enforce it, and how is it going to be enforced when the court allowed Mr. Cooper to present the evidence with Mr. I think his name was Maloney. Mr. Maloney presented the evidence that he had in front of him as far as the damages that he had. Okay, let's hear from the government, and we'll give you a chance to respond. Okay. Thank you. Good morning. Stephen Cooper for the United States. If you'd lift it, there you go. Yes, I'm Stephen Cooper for the United States. At the outset, I wish to apologize to the court and opposing counsel. I'm the one that drafted the inaccurate language that gave occasion for the controversy. Well, which language is inaccurate? It's inaccurate. It was inaccurate, and I characterized that in my brief to say that no restitution is involved in this case. Well, maybe the part that's inaccurate says that the judge has the right to impose restitution. How do I know what's inaccurate? That's the part we're referring to, and that's the one that's inaccurate. Well, I understand that's the part you're referring to, but we've got essentially contradictory language in the plea agreement. Correct. And you drafted it. That's correct. And so we should construe it against you, but what's that mean? Well, that means to take what would be the most reasonable understanding that the defendant had of this, Mr. Bloom had of this agreement when he entered his plea. Not today, not at the time of sentencing, but the time he entered his plea. And so going to the change of plea transcript is where we get the authority for what this agreement was reasonably understood to mean. Okay. So where in the plea agreement does he say you can impose restitution? He says that in writing, in the plea agreement, on excerpt page 23, the court may order the defendant to pay restitution. No, no, I understand the language of the plea agreement. You said at the plea agreement, he said something. At the change of plea. At the change of plea, did he say something orally that said, I understand that the government may impose restitution on me? Restitution wasn't verbally mentioned, but the agreement that had it mentioned expressly was under discussion at that time. So for the purpose of anything that he thought he was agreeing to, we're looking to the text of the plea agreement. That's the text of the plea agreement coupled with his statements at the time he changed his plea on the basis of that agreement. And is there anything, when you say his statements, is there anything that clarifies or refers to restitution so I can go beyond what's actually just in the restitution written agreement? The part that comes the closest to it would be on excerpt page 48 and 50. Okay. And 48 says, let me hear. I'm sorry, not 48. 44 and 50. On 44, I think this may be where the court was referring to a few minutes ago. It says, the judge said to him, you waive anything with regard to forfeiture or fines or supervised release or anything of that nature. In other words, it's an inclusive, not an exclusive. So anything of that nature, he's supposed to understand the restitution's included in the phrase, anything of that nature? Because he mentioned that in writing in the document that was then under discussion by the court. Okay. Got anything else? And then he said, you basically waive everything in signing this. Do you understand that? Yes, sir. But he's talking here, I think, in the context of waiving appeal. He is. But the issue is whether restitution was foreseen as a potential element in the sentence. I understand that. So is there anything else in the plea colloquy that goes back and forth that tells us that he understood that he was agreeing restitution could be imposed? In relation to the fact, yes, in relation to the fact that the plea agreement that mentions it was under discussion when those words were exchanged. No, I've got that part. Page 50. But is there anything else in the conversation where we refer to something that can be understood as referring to restitution? Well, could be understood as excluding any obligation to exclude restitution. In other words, that there wasn't anything, any promise or any obligation that excluded it. I want to be precise. I'm not asking you to explain. I'm asking you to point me to language in the colloquy that I can look at. Is there any other language in the colloquy that I should be looking at? There is definitely language that the court should be looking at, and that is on page 50. Okay. Thank you. Where it says Judge Beislein said to Mr. Blum and his attorney, are there any agreements with regard to the sentencing that I missed? And the answer from his counsel in defendant's presence was, other than dismissing the last three charges, no, Your Honor. And Judge Beislein says, okay, all right. So it's what we call open sentencing. All right. So he's excluded any provision that the defendant is now asserting existed, that restitution was not to be part of this sentence, that it was going to be cut out of the sentence. Okay. I kind of thought we were going to get to this point. As I read the language in the colloquy, the word restitution is not mentioned. And the closest you can come to the word restitution is the language on 44, which is to say anything of that nature. And that's nature in the nature of forfeiture or fines or supervised release. If we're lawyers, restitution is very different from forfeiture or fines or supervised release. So anything of that nature to me as a lawyer doesn't say restitution. It says anything of that nature. It says everything. Anything of that nature and everything. It says anything of that nature. And no agreements. And he agreed it was an open sentencing case. Whether the position of the defense now is it was not open sentencing, the government and the court were under an obligation to exclude restitution from this sentence, and that restitution ended up in the sentence. That's contrary. Let me try to understand exactly what the timing was on this. My impression is that before the sentencing hearing, after the plea agreement had been entered into, that the defense counsel raised the issue of restitution with the court. Is that correct? Before sentencing. Before sentencing. Yes, correct. It did. Was it raised in writing? It was raised in writing. So at the time of the sentencing hearing, Judge Beislein and Mr. Bloom and counsel, everybody knew that restitution was on the table, right? That's correct. Okay, so that's when Judge Beislein starts his colloquy. He wants to be sure that Mr. Bloom understood what was going on. No, no, the change of plea colloquy on pages 40, 50, et cetera, was prior to all that. No, I understand that. My point is that at the time you had the sentencing hearing, that this was not some legal issue hidden in a contract which had not yet surfaced. Correct. It had not been discovered. It was out before that. Both sides knew that there was this conflict in the language. Judge Beislein knew it. The parties knew it. It had been discussed orally and in writing. So then you get to the sentencing hearing, and you get the colloquy of the judge, and ultimately there was an understanding and agreement that, number one, Mr. Bloom waived appeal, and, number two, it was an open sentence. Is that correct? That's essentially correct. Essentially correct? Well, the defense claimed before the sentencing hearing started, filed a sentencing memorandum in which the defense claimed, and I think it's pages 99 and 100 of the excerpts, that this restitution phrase in the agreement was a promise by the government that it wouldn't seek restitution and it was a guarantee that the judgment wouldn't contain it, and that now the pre-sentence report was saying there needs to be restitution and it's mandatory. The defendant was saying that's contrary to our agreement. However, the defendant does not wish to withdraw his plea, and he does not wish to withdraw from the plea agreement. To me, that's the most compelling thing, is that after all this discussion, at 99 and 100, you've got the judge asking whether he wants to withdraw the plea agreement. He knows there's this conflict. He knows there's a disagreement, and he says, no, I don't want to withdraw this. I realize I can't appeal. It's one step stronger than that. The judge didn't ask him if he wanted to. He told the judge before the hearing, I don't want to. He affirmatively raised the subject, displaying that he understood he could withdraw if he wanted. I may be mistaken here, then. The language that you and I have been talking about, where anything of this sort and so on, that takes place when? That was in October at the change of plea hearing. Okay. Then at what point before or after this October colloquy is the prospect of restitution raised? The next event in which it was raised was. . . No, when was restitution first raised, specifically saying we're seeking restitution? It was first raised in the plea agreement that the defendant signed. But that's the language that you're just referring to, right? Not just that language, but the language on page 16 of the excerpt, saying, excuse me, on page 23 of the excerpt, where it says the court may impose it. Let me take it slowly. I think I'm going too fast. Okay, I've got the plea agreement. I've got the colloquy that we're reading here on excerpts 44, 50, and so on. And then I also have something that happens when the government makes it clear that it is seeking restitution and naming an amount, and at that point the defendant objects to restitution. When does that happen? The sequence in which it came up and what we said was the following. We filed it, and we presented a plea agreement that had restitution in it as a distinct possibility. We went to a change of plea hearing in which the word wasn't raised, but the defendant said we had no sentencing agreements at all. Then the next event was the 1st of December, which the draft pre-sentence report came out and revealed that indeed the victim did have a restitution claim for lost wages, not for medicals or doctor bills, but just lost income, which had been building during that time that we didn't know about. Gotcha, so what I want to make sure, and I'll get back to the defendant, but I want to make sure then that we've understood that the plea agreement itself and this colloquy on pages roughly 44, 50, and so on, that takes place before the PSR comes in and before the government has indicated affirmatively that it will seek restitution. That's correct. So at the time he's entering into this agreement and having this colloquy, the government has not said we want restitution. No, we left it open as a possibility. Correct. We didn't know of the factual existence of a claim. Let me ask you the question that I asked your adversary, but it was really a question for the government, and that is do you take a waiver of appeal to include a waiver of the ability to ask the government to abide by the agreement it entered into? I don't think that that is the correct statement of our position or of the law. I think the law is that a breach of a plea agreement overcomes a waiver of appeal. So if we were to conclude that the plea agreement obligated the government not to seek restitution, that's an appealable proposition as to whether or not the government has undertaken an obligation which it has at least allegedly breached. To put it exactly, it is a waiver of appeal that may have existed. The claim of breach is not a bar to appeal of that issue. But whether it can be reviewed is a question whether it has been asserted below. And in this case, the defendant did not assert breach. He claimed breach but waived all relief from it and said, I do not wish to withdraw from the plea agreement. Well, wait a minute. It's breach, but I don't think. Breach might mean not that he wants to withdraw. Breach might mean he wants to enforce. He, well, enforcing his terminology was one thing that just simply wasn't available under the law. Which is? Which is a judgment that lacks restitution. Well, you see, but that's the very question that's in front of us. Did he agree to a plea agreement that says no restitution? And he says he agreed to a plea agreement that says no restitution, and he's seeking to enforce it. Now, it may be that we agree with you that the plea agreement doesn't provide an enforceable obligation on the government not to have restitution, but it seems to me that he has not waived the argument that I want enforcement of the agreement as I read it. And then I guess we decide, okay, how do we read it? I don't think he's asking the court on appeal to do what he asked the court to do in the district court, which is grant me a judgment that doesn't have restitution in it. He's not asking this court to do that. He hasn't done that. So he's only asking for withdrawal at this point? That's correct. Counsel just told us that he does want to withdraw and go to trial. That's right. But he's not asking the court for what he nonsensically, I guess you could say, asked the district court to do, which is give me a judgment that doesn't have restitution in it, even though I know restitution is mandatory. Please do that for me. That was what was requested below, but it's not what's being requested here. Did he know about the mandatory nature of the statute when he signed the agreement that contained the words no restitution? I have no external evidence of that. I can infer that he had competent counsel and he knew it, but it wasn't. Isn't there a problem when we have some case law that says an agreement to waive is not, or a waiver is not knowing and voluntary if it's based on a misunderstanding of a document that contains an ambiguity. Very true. But there's two things we're talking about waiving. One is waiving appeal. We're past that point because he has appealed. We had a motion. Well, he has a good-faith, arguable question, a reasonable mind, reasonable lawyers could argue about. So he has a right to an appeal, but there may be a defect in his waiver of the appeal. I wouldn't be concerned about his waiver of appeal at this point, but the waiver that is of concern to the court is the waiver of his right to relief from an alleged breach of the plea agreement. And when he made that waiver, it was on page 99 and 100 of the excerpts, that was four to six weeks after he was advised in writing that restitution was both claimed and mandatory. Actually, isn't there even more here? The defense counsel, if I recall the date correctly, wrote a memo to the court on, I think, January the 8th, laying out the whole issue of the restitution argument. Then you had the colloquy and sentencing hearing on January the 10th. Everybody had this in front of them. The court discussed at great length the fact that it was mandated. There was a mandatory sentence or mandatory restitution involved in this case. He had no choice. He went through it in some length, and at least as I read it, the defendant acknowledged that, accepted that, and said he was really sorry and went through the whole thing and acknowledged and accepted the sentence. So, you know, I think we're being hyper-technical here, I suppose, which is our nature, but since this is a contract, even if there was ambiguity in the first place, it was openly discussed before the sentence was actually imposed. He seemed to have accepted the sentence. Everybody knew about it. He talked about it with the judge, and now he's both waiving the appeal and now he's saying that what he said he clearly did not want to revoke, he's now revoking. It's like calling in a script writer in the middle of the performance and saying, change the results. I mean, either we're stuck by the record or we're not stuck by the record. And if we're stuck by the record, how does this man, how does he get to withdraw his plea once this issue has come up, it's been discussed, and he's accepted it? I don't get it. That's correct. In addition, he affirmatively said he did not wish to withdraw his plea. Exactly. Now he's in exactly the opposite position today and is trying to ask this court to find fault with the district court for not granting him the relief he wants this court to grant when he told the district court, I don't want that. That's essentially what happened. And that's a stronger commentary on what he really thought was the materiality of this no restitution provision. It wasn't material or he wouldn't have waived relief. If we had a situation where this were discovered after sentence, nobody said anything about it, I'd have some real empathy because you can say, boy, there's some ambiguity in this contract. What's the impact? But all this was discussed before the sentence. It all went down. Everybody knew about it, and he said he accepted it, and he said he waived any right to appeal and he didn't want to withdraw this plea agreement. And that was in writing before the sentencing hearing started. Exactly. Okay. Thank you. Who do you want to put? Two minutes on the clock. Thank you very much. All I can say is that with the trial counsel that argued for the performance of the contract, the district court awarded the restitution to Mr. Maloney, and at the same time turned around and said that the restitution was very speculative. I mean, the whole thing, like I said, is a contradiction. As you can tell from my questions, I would be much more sympathetic in this case if he were simply trying to enforce the agreement that says no restitution. To say he wants to withdraw puts it in a very different pocket. Well, I wish he'd asked for it here. I mean, even though it's not a huge amount of money, but what are you going to do when you don't have a job or you're doing the most meaningful type of job? Because he is just going to cost. Well, I think I speak for all of the panel. All of this could have been avoided. It could have been avoided by a plea agreement that was written clearly without contradictory self-canceling language. Thank you. United States v. Bloom is submitted for decision. Thanks both of you for your argument.
judges: Goodwin, Fletcher, Smith